The next matter, number 221896, Alexis Webb et al. versus Injured Workers Pharmacy, LLC. At this time, would counsel for the appellants please introduce himself on the record to begin. Good morning, Your Honor, and may it please the Court, David Leitz for the appellants in this matter. Actual misuse is concrete injury for Article III standing purposes. And in this case, the plaintiff's appellants below pled actual misuse in the form of the 2021 fraudulent federal tax return that was filed on behalf of Plaintiff Webb. And despite this clear allegation in the complaint, the District Court dismissed the case for lack of pleading a legally cognizable concrete injury. Every circuit that has approached this question and the United States Supreme Court has ruled that if a plaintiff pleads actual misuse, that this satisfies the concrete injury standard for Article III standing purposes. But that's for one of your clients. Yes, Your Honor. What about the rest? Well, Your Honor, in the Equifax case in the 11th Circuit, the Court held that if one of the plaintiffs pleads actual misuse, then it satisfies the standing requirement for all of the plaintiffs at the pleading stage. This is also found in the Marriott decision at the U.S. District Court for the District of Maryland, where two of the plaintiffs at least pled actual misuse of their data. And then the Court concluded that this would satisfy the standing requirement for the putative class. The reason for that, Your Honor, is that we would also look toward the imminent risk of harm injury under the Clapper case for the remainder of the class. And this is where we start getting into sort of the three commonality analysis and where the actual misuse for Plaintiff Webb would satisfy one of those three commonalities, which would be that some of the data was misused in this data breach. And in this case, Your Honor, we do have the argument that there is imminent risk of harm that is shown by the actual misuse. It's also shown by the fact that what data we're talking about here is of the type that can be utilized to commit identity theft and fraud. So in this case, Social Security numbers were alleged to be compromised and part of the data set that was the PII that was provided to defend an injured worker's identity. And so when you describe the data breach, I was a little confused from the filings as to whether the breach was into employee e-mails or into like a broader patient information system. Yes, Your Honor. It was not a data breach that got into the medical records database as I understand it. So this was a typical data breach where the initial attack vector, if you will, was into employee e-mail systems and then the threat actors started to move around within the defendant system's network environment, collecting data. And there is allegations that the data was exfiltrated by the threat actor in this case. So sometimes you have these ransomware cases where the threat actor just gets in the system to look around and to lock up files for the purpose of extracting a ransom from the defendant. In this case, there is an allegation at least of evidence of exfiltration, meaning stealing the data, taking it out of the environment. Which data? Again, PII belonging to the punitive class here of over 75,000 persons. And in that data set that was compromised or that's alleged to have been compromised in this breach, it includes Social Security numbers. And this is what takes this case out of the realm of some of the cases where the federal circuits have found that there is fraud in the 11th Circuit or the In Re Supervalue case in the 8th Circuit, where you had credit cards that were compromised and then the credit cards get canceled and they can't be used to sort of reverse engineer identity theft or fraud. But if the court were to look at the In Re Supervalue case, the 8th Circuit in that case draws kind of a bright line distinction between those cases where you have the kind of data that can be used to perpetrate identity theft and fraud. And again, most notably, Social Security numbers. So the 8th Circuit in Supervalue says if it had been a Social Security number that had been compromised, we would have likely reached a different result. And so that's what we have in this case. And this gets into the three commonality analysis again. What would the court below look at when assessing whether or not there is an imminent risk of future harm? Counsel, so your opponent says you're heavily reliant on the attempted filing of a false tax return. Did that false tax return include a Social Security number? Your Honor, it's our contention that to file a fraudulent federal tax return, one would necessarily need a Social Security number. And indeed, the very pieces of information that are needed to file a fraudulent tax return in this day and age would be pretty much a name and Social Security number. And that's really all you would need because most federal tax returns these days are filed electronically. You don't actually attach sort of paper W-2s. You really just sort of fill out the electronic form. And if you have the right name and the right Social Security number, that will enable you to file a fraudulent tax return. And that's what we had here. That's what the allegations are in the complaint, that for Plaintiff Webb, you had a fraudulent federal tax return. Okay. I do have some questions, please. Your opponent says you did not adequately allege a connection between the filing of the fake tax return and the data breach. And the district court seemed to agree with that. So that's question one. Question two is your opponents say TransUnion changed the ball game as to Article III standing. At least it changed it in that there is a distinction between injunctive relief and damages. And I take it you're seeking both here. So could you respond to both of those arguments that your opponent made? Yes, Judge Lynch. So with regard to your first question about sort of what's basically the traceability argument, I would actually point the court at the court's own ruling in the even flow case at 54 Federal 4th 2834, where the court wrote traceability requires the plaintiff to show a sufficiently direct causal connection between the challenge to action and the identified harm. And then I'd further point the court to the case law that we cited in our brief, the Inree Community Health case, where the standard at the pleading stage, and again, we are at just the pleading stage here without a fully developed record, really just requires sort of plausibility, kind of an obvious logical connection that could also be supported by a temporal connection. And we have that here. So what we have, Your Honor, is for traceability purposes, the Social Security number being alleged to be compromised for Ms. Webb in calendar year 2021. And then we have subsequent to that a federal tax return that's filed in her name. You would need the Social Security number to be able to pull that off. That's all you need, really. And it happens in time afterwards, necessarily, because you file a 2021 tax return in 2022. So that's the response to the traceability argument. And courts like the Second Circuit and the Carter v. Health Port Technologies LLC case at 822 F 3rd 47 have further said that fairly traceable at the pleading stage doesn't create an onerous standard and that it is a standard lower than proximate causation. And again, this sort of goes to what we're seeing from the U.S. Supreme Court and the Lujan v. Defenders of Wildlife, where when we're talking about standing, what's critical for the court is to focus on what stage of the case we're at. And again, we're merely at the pleading stage. So it is basically a lower standard at this point. What do you say about their argument that even if the district court erred as to Article III jurisdiction, you still failed to state a claim under various state negligence and other theories? Should the court actually get into that? The district court didn't. Judge Lynch, I want to answer that question directly, and then I want to loop back to your other question about transunion. So to answer this question that's on the table, this is a Rule 12b1 dismissal. And again, as the court noted previously in the Haakon Donor v. Genzyme Corp case, a Rule 12b1 dismissal is without prejudice. And so it wouldn't be proper for this court to delve into a Rule 12b6 dismissal at this point, because it would be a different ruling. It would be a final judgment as opposed to one without prejudice. At this stage of the case, the plaintiffs, the appellant and plaintiffs could refile and will refile this case. It's simply a matter of where we refile it, back in state court or back in federal court, if the federal court rightly has jurisdiction over this case. And that's sort of the import of this. But again, the Haakon Donor case unequivocally says... So transunion, Judge Lynch, it doesn't change the landscape for this case. Again, because this is an actual misuse data breach case, it's not solely an imminent risk of harm data breach case. And in transunion, Justice Kavanaugh wrote, if the risk of future harm materializes and the individual suffers a concrete harm, then the harm itself and not the preexisting risk will constitute a basis for the person's injury and for damages. And that's in Transunion v. Ramirez at 141 Supreme Court 2211. So again, the Supreme Court, if we go back to the beginning of my presentation, all the federal circuits and the Supreme Court have found that when you have an actual misuse case like this one, the plaintiff has satisfied the concrete injury, the injury in fact, burden of pleading for Article III standing purposes. Where the waters get a little muddy is when you start looking at transunion vis-a-vis the analysis of the imminent risk of future harm. And this is what transunion was really sort of where they kind of split the baby. And they cut that class that was taken all the way to trial and a plaintiff's verdict rendered on behalf of the entire class of over 8,000 persons. The Supreme Court said, no, for these 1,800 people for whom we have seen that the information was used, no Article III standing. But for the remainder, where there's no evidence that the information was even used, no Article III standing for them because they can't establish the... Okay. At this point in the pleadings, you have one plaintiff who asserts actual injury. I take it the idea is you survive on standing grounds, you send out a notice to the class, and you find out if others have also had false tax returns filed in their names who may not have connected the dots yet and come to you? At some point, if we were to get into discovery, Your Honor, we would ask for information about the class. We would start to try and engage in that sort of discovery, and we would have to try and satisfy standing to a higher level for the entire class. But that would be down the road at the class certification stage, not at the pleading stage. So for the pleading stage, again, we sort of go to what Equifax said, which is if you have some misuse for one plaintiff, then it counts for Article III standing purposes to survive a motion to dismiss under Rule 12. Same thing in Remarriott. So in all these data breach cases, the rule that seems to have been articulated by courts around the country, including at the federal appellate level, is standing for one based upon allegations of actual misuse will count for standing for all. But to be precise, your other clients, you know now, presumably, that there weren't false tax returns filed in their name. So you're not claiming that the harm to them or the injury to them is the filing of a false tax return to which they have to respond. I think you're claiming that the duration of the hack, the presumed motive of the hack, and the fact that you already know of at least one person who had a tax return simply means that the others have an injury, in fact, not of having a false tax return, but of fear or risk of having bad use made of their information because the tax return suggested is indeed in the hands of bad actors. That's what I understand your argument to be with respect to risk. That's correct, Your Honor. We satisfy that three commonality test, which again, if we have actual misuse for one, if we have the kind of data that was compromised that can perpetrate. May I stop you, please? Let's just drop the actual use for one out of the case and accept for whatever inferential value it has, as opposed to we have standing based on actual use. For the other plaintiffs, what Judge Kayada's question, if I understood it correctly, was going to was whether the increased risk perhaps supported by the actual use in one case is sufficient in and of itself to establish standing. The answer is yes, Your Honor. I see my time is up. If I may answer briefly, it's yes. In some of the circuits, like the D.C. circuit, in the Atiyah's case, they basically said a single factor can satisfy the imminent risk of harm. If a social security number is compromised, that can establish the injury, in fact, based on Flapper's imminent risk of future harm. It would be enough even without the misuse. But the misuse sort of coalescing with the fact that this was a threat actor infiltrating the environment, that it's social security numbers that were compromised, and then the misuse for somebody else, all coalesces together under the three commonality test to establish that everybody else has an imminent risk of future harm, which is a concrete injury for standing purposes. Suppose someone gets noticed that they were a victim, their information was included in this hack. They look at it, they say, ah, this happens all the time these days, and they throw it away and they go about their life and nothing ever happens. Would they have suffered an injury, in fact? Yes, Your Honor. I would say that they would if their data was in the data set, because you have to imagine these threat actors compromising 75,000 social security numbers. They're not going to use those all at once. But the allegation, at least, is that they have this now stockpile of social security numbers that at any point down the road they could come forward and use. And they do. There is evidence in some of the data breach cases I do, where years later, after the credit monitoring has expired, after people are on guard, that then the threat actors sort of drop the hammer and basically come forward and do something with your stolen data. You've talked about risk of harm and the imminence of harm and the plausibility. As I understand your argument, though, you have another whole category of injury, in fact, which is a number of your clients have claimed to have suffered emotional distress as a result, including with some physical symptomatology. Yes, Your Honor. And that would be another form of actual injury, concrete injury that's pled here. And then a separate question would be whether under a negligence or one of the other claims you could, in fact, recover that would be a merits issue. That's right, Your Honor. And, you know, again, we're not there. But you really need the risk one because you won't have a class. That's right, Your Honor. Thank you very much. I ask the court to reverse and remand the decision of the district court. Thank you, Your Honors. Thank you, counsel. At this time, would the attorney for the appellee please introduce herself on the record to begin? Good morning. I'm Claudia McCarran of Mount Coghlan, and I represent Injured Workers Pharmacy. There's a number of things I'd like to mention at the outset based upon Mr. Light's able presentation, and I think where we disagree. On behalf of the defendant, we think that this is before the court on the four corners of the complaint. And the allegations of fact supplied by the plaintiffs and logical inferences that can be drawn therefrom. So while it is interesting to speak about data breaches generally, and Mr. Light's is very experienced, my firm exclusively works in this space, so I would be interested in having a conversation on the persistence of social security numbers in the dark web or in cyberspace. That's not in this complaint, and this court cannot be influenced by those remarks. With respect to the use of social... Even at the 12B6 stage, and we're not there, we're at the Article III standing stage, we're supposed to think about what's plausible, and you're saying that even if it were plausible and more than plausible, that there was actual use here. If the complaint doesn't flatly say there's actual use, we have to affirm. I don't follow your argument. Your Honor, we know that there was a false tax return used. The complaint does not allege that... Two things are known. One, Ms. Webb's social security number was compromised. She was notified of that, and she's pled that. But compromised and exfiltrated are two different things in this world, because when a data breach occurs and the investigation takes place, the responsibility is to determine what portion of that network infrastructure was accessed. And then within that portion, can you determine what the threat actor actually touched? Many times you cannot make that determination, but that information is considered compromised, even though it can't be determined it was viewed. As a result, people are notified that their information was compromised. She received such notice. She wasn't told it was exfiltrated. That's not in the notice letter, and there are notice letters that read that way. But there's an example attached to the complaint, and it uses the word compromised. Well, let me ask you a hypothetical about that. There's a guy standing outside the courtroom. There's a 50-50 chance he's a data hacker who files false tax returns. 50-50 chance he's not. I'd now propose that we give your name, social security number, and the name and social security number of everyone in your family to that fellow. Would you have concerns about that? Given the fact that my health insurer announced a breach yesterday, Your Honor, no. Most people would not want their social security number and name given to that hypothetical person I just posited who was sitting outside the court, who is a 50-50 chance will use it to file fake tax returns. Your Honor, 145 million social security numbers were already exposed for Americans in the equestrian community. So I think what you're saying is you wouldn't be bothered at all, nor would you expect a reasonable person to be bothered. I think there are people who don't know this area, like I do, who probably would be bothered, but being bothered isn't standing to sue, Your Honor. Why does the FTC require companies like your clinic to give notice when they've been breached? Actually, Your Honor, the notice requirement is not coming from the FTC. Well, from Massachusetts regulators. The mission of the attorneys general around the country is very different than in accomplishing sort of a broad prophylactic umbrella over the security of the citizens of their states. And they've made decisions about what would be the best way to throw that broad net. Didn't your client suggest to the plaintiffs that they should be diligent in monitoring things going forward? Our clients are required to give notice by the states, and the contents of that notice is dictated by state law. So was that a yes? Did we give that notice? Yes, we did. Did we do it because we were required to? Yes. Is your average person who gets a notice saying they should monitor something that your client gave pursuant to an official requirement of Massachusetts law, you're saying it's not reasonable for that person to take some precautions? It is reasonable to take precautions. And why isn't that injury? Because, and let me be specific, it's not a concrete injury. A concrete injury requires something that the courts traditionally provide some sort of recovery for. So normally it would require an economic impact or some other implication, implicating some other intangible right for which there is a right of recovery. But people recover damages for emotional distress every day in this country. But there's a threshold, Your Honor. We don't open the courthouse doors to everyone who is concerned, worried, disturbed. There's a higher level of, and it varies from state to state, certainly what that higher level is. Sometimes it requires actual physical impact, zone of danger, but it certainly requires some significant level of disturbance beyond anxiety, worry. How do you deal with TransUnion's statement that the disclosure of private information is classically an example of a recognized injury in fact? In TransUnion, the private information had reputational consequences and therefore permitted an analogy to the traditionally recognized tort of defamation where recovery is permitted without any economic harm at all. So it wasn't simply that private information was exposed. It was the character of the private information. And that holds true in data breaches as well, although there's a tendency for plaintiffs in this area to draw too tight an analogy between the facts of TransUnion and most data breaches I'm familiar with, and I'd like to say that up front. In TransUnion, there was a false document created by TransUnion and it was disseminated by TransUnion. In this case, my client was victimized by a cyber criminal. My client didn't disseminate anything. If anything was removed from the system, it was stolen. And that's a very significant difference. There is no intentional conduct. So when you get away from reputation... Well, there was some intentional conduct. After your client found out about it, instead of, as it was required to do, going and telling people about it, it kept mom on it for months. At least that's the allegation. So we have to assume that's the case. So if we accept that allegation, how can you say there was no wrongdoing by your client? Your Honor, I question whether the court must accept that allegation. It is speculation. No, they said months passed before your client, between when your client discovered and when your client gave notice. That doesn't sound like speculation. It might be false, but it's an allegation. It is true that months passed between when they discovered the breach and notice was given. The allegation is for inexplicable delay. And my response is the plaintiffs have no knowledge of whether or not there is an explanation or it's truly inexplicable. And so the court should disregard that. Again, I am not permitted to, and I shouldn't, go further than that. So you say to the extent TransUnion recognized injury, it was because the nature of the disclosure there was like the traditional tort of defamation and that nothing about this is like a traditional tort anywhere. Is that your argument? That is the argument, Your Honor. Okay, and suppose there is actual use. Suppose we credit that. Isn't that like a traditional tort misuse of private information? Misuse of private information? Many states have privacy laws that are very explicit on this. Is there something about both? Your Honor, I think it's the specific nature of this information that if the analogy is to an invasion of privacy claim or a privacy violation, those actions typically protect information that is highly sensitive that the ordinary individual would take extreme distress offense to. Social security numbers, which is, to an earlier point, there is not a general allegation of all social security numbers for this population was exposed. There is an allegation that Ms. Webbs was. Other than your name and your date of birth, there is no single personally identifiable information that an individual shares more with the outside world than their social security number. For every job, every benefit, when you write the check for your taxes, tax providers, student loans, it's cradle to grave now because you can't take a child as a deduction without putting their social. If I understand you, you're making the argument social security numbers are not personal private information. I am not saying that, Your Honor. I'm saying their disclosure is not of the same character of the type of information for which a remedy is provided in the invasion of privacy cases in those courts. How far are you taking this? I've got a locksmith. I hire the locksmith to replace all the burglary ring, and I found out that he's done that. Have I got a claim against the locksmith? I'm sorry. He gives the key to? The local gang of burglars. They haven't yet robbed my place, but I just found out that there's been this disclosure in giving them of a key. Don't I have a claim against my locksmith at that point? You do not, Your Honor. So I'm just out of luck. I've got to wait until I'm burglaried? That's correct. And I know that seems harsh, but assuming that you did not, you and your locksmith didn't enter into an agreement that had an obligation for him to keep that confidential, assuming that... You don't think there's an implied obligation on my locksmith not to hand out my keys? I think there's an expectation. I think there's not a contractual obligation. Suppose we were to disagree with you. Suppose we were to think that there was a claim against the locksmith, that the law has some common sense to that point, then how would you distinguish that situation from what happened here? Because I think underpinning your Honor's hypothetical is there was some knowledge or intentionality when the locksmith shared that with the burglar that the burglar was going to commit a crime. Suppose there was negligence by the locksmith. He or she was very sloppy in keeping my keys. So I bring a negligence claim, and you would say no standing. I would say that that is not a reasonably foreseeable outcome from sloppy handling by... Depending on the facts of... Did he leave it on your front step with your address on it? But for the most case, if the locksmith is negligent and somehow someone puts that together with a particular... I think under sort of the foreseeability Paul's graph kind of test, whether or not the locksmith could be held responsible, I think is questionable. And so we'd need a little discovery to find out what exactly the negligence was like? In an individual case against the locksmith, it might go into discovery, and it might be a fact-based... And here, don't the plaintiffs need a little discovery to discover how negligent your client was in letting this happen occur for months and not tell people? Your Honor, in order to get there, before the juggernaut of class action litigation begins, there should be a concrete harm. That release of information, which right now we're only talking about a social security number for one individual, which we contend is not fairly traceable to this event. But assuming that the court thinks it is, there is no other... I'll wrap up. Other than the fact that it occurred, unlike any other misuse case that you will find, there is no allegation of any economic harm. There is no allegation that she had to undertake mitigation costs, that she needed CPA, that anything untoward happened to her, for which there is a legally cognizable right to recover. I thank the court for its time. Thank you.